UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUSTIN OGLE,<br><br>    Defendant. | Case No. 15-cr-40042-JPG-003<br><br>**UNDER SEAL** |

# MEMORANDUM AND ORDER

This matter comes before the Court on defendant Justin Ogle's *pro se* motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 516). The Government has responded (Doc. 520), and Ogle has replied to that response (Doc. 523). The Court also addresses Ogle's motion for appointment of counsel (Doc. 517).

**I.     Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>     (1) in any case—
>         (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of

> probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2).[1] The application notes further define "extraordinary and

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

2

compelling reasons" to include, as relevant for this case:

**(A)** **Medical Condition of the Defendant.—**
(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
(ii) The defendant is—
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

\* \* \*

**(C)** **Family Circumstances.**
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D)** **Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release.  18 U.S.C. § 3582(c)(1)(A).  The movant bears the burden of making such a showing, and the Court has discretion to determine whether

---

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government.  *Gunn*, 980 F.3d at 1179.

the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180. The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis. *Gunn*, 980 F.3d at 1180. The Court now turns to the specifics of the defendant's case.

**II.    Analysis**

In September 2016, Ogle pled guilty to one count of conspiracy to manufacture and distribute methamphetamine (Count 1) and one count of possession with intent to distribute methamphetamine (Count 2). At the defendant's sentencing in March 2017, the Court found that his relevant conduct was 143.5 grams of methamphetamine ice, which under U.S.S.G. § 2D1.1[3] yielded a base offense level of 30. This offense level was reduced by 3 points under U.S.S.G. § 3E1.1 for acceptance of responsibility, yielding a total offense level of 27. Considering Ogle's criminal history category of V, this yielded a guideline sentencing range of 120 to 150 months in prison on each count. The Court imposed a sentence of 126 months on each count to run concurrently. Ogle's projected release date is June 2, 2024. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited June 21, 2022).

Now, Ogle asks the Court for compassionate release for a variety of reasons. He asserts that he faces a high risk of contracting and suffering severe illness or death from COVID-19 because he is obese and a former smoker, and he suffers from high blook pressure/hypertension, depression, anxiety, and breathing problems, all COVID-19 risk factors identified by the CDC. He states that he has contracted COVID-19 twice and was not treated by medical staff at FCI-

---

[3] Unless otherwise noted, the references to the guidelines in this order are to the 2016 United States Sentencing Guidelines Manual.

4

Pekin, where he is incarcerated.  He contends BOP facilities have been, and continue to be unable to control the various variants of the coronavirus.  In the meantime, the measures the prison has implemented to contain the virus—limiting phone calls, emails, visits, recreation, laundry, showers, programming, religious opportunities, medical care, inmate movement, etc.— make life harsh for prisoners.  Ogle also points out that it is difficult to locate and have contact with his two children, who Ogle asserts have been left by their respective mothers in the custody of their mothers' former partners.  Finally, Ogle claims he has been close to a model inmate, with only one rule infraction during his 5 years of confinement and a successful track record in his prison food service job.  He asserts he will not pose any danger if he is immediately released to reunite with his family, to get a job, and rejoin society outside the prison walls.

     In response, the Government argues that Ogle's medical problems, even in combination with the COVID-19 pandemic, do not amount to extraordinary and compelling reason for release because he has been fully vaccinated and boosted against the virus.  The Government further notes that, although the BOP has not been completely successful in controlling the spread of COVID-19 in its facilities, it has taken diligent steps to protect vulnerable inmates, including increasing the use of home confinement and imposing some of the "harsh" conditions about which Ogle complains.  The Government further argues that Ogle remains a danger to the public.  It points to his multiple prior convictions and arrests for battery or domestic battery and his failure to abide by the conditions of probation and conditional discharge.  It also points to his 2020 prison discipline for threatening a staff member with bodily harm and the BOP's assessment of Ogle as at high risk of recidivism.  The Government has not invoked exhaustion of remedies as a defense, so has waived that argument.

     As for the defendant's physical condition, the Court does not dispute that he suffers from

serious health conditions that make him especially susceptible to the dangers of COVID-19. However, the medical records submitted by the Government show he is currently receiving medical attention for those conditions and, when he did contract COVID-19, he was asymptomatic. Further, he has been fully vaccinated and boosted and has not shown he is unable to benefit from that vaccination. "A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to [the compassionate release] statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *accord United States v. Kurzynowski*, 17 F.4th 756, 760-61(7th Cir. 2021); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (recognizing "prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release"). Granted, *Broadfield* was decided prior to the Omicron variant's becoming prevalent and an increase in the percentage of breakthrough infections of vaccinated people, but *Broadfield*'s principles remain true: to show extraordinary and compelling circumstances, an inmate must show he remains vulnerable to severe infection—from Omicron or any other variant—notwithstanding his receiving the maximum vaccine protection available to him. *See United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022). Ogle has not carried his burden of showing that COVID-19 still poses an extraordinary and compelling risk to him after his full vaccination and booster.

As for the COVID-19 pandemic generally, the Court acknowledges the particular danger posed to prisoners, who live in close quarters and often cannot practice social distancing, as well as prison staff's less than perfect compliance with prison virus containment policies. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular

prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Furthermore, the BOP has already administered more than 321,000 doses of a COVID-19 vaccine in total and has vaccinated approximately 1,126 of the approximately 1,259 inmates at FCI-Pekin, where Ogle is currently incarcerated. *See* BOP, COVID-19 vaccine implementation, https://www.bop.gov/coronavirus/ (visited June 21, 2022), which will greatly reduce the threat to inmates from the disease.

As for the harsh prison conditions to which Ogle has been subject during the pandemic, those conditions result primarily from the BOP's efforts to stop the spread of COVID-19 to him and his fellow inmates. The measures he describes, while not pleasant, appear to be reasonable responses to an extremely contagious disease in an extremely confined environment. Should Ogle feel the conditions are unacceptable and not justified by a legitimate penological interest, he may pursue a separate conditions of confinement lawsuit.

As for Ogle's desire to locate, communicate with, and care for his children who he believes have been abandoned by their mothers, Ogle has not pointed to sufficient information to support that this is an extraordinary and compelling family need. In fact, the Court notes that Ogle's PSR indicates his parental rights were terminated as to his daughter, who was subsequently adopted by her mother's husband, and that he has had no contact with her since 2012. Ogle has not provided any detailed information about whether she is being adequately cared for by her mother and adoptive father or about why he would be the appropriate one to care for her if they are not. As for his son (who is not mentioned in the PSR), again, Ogle only speculates that the care being provided is inadequate and that he is the *only* reasonable caretaker available. Until Ogle can show they are *not* being adequately cared for, this Court will not find his family needs an extraordinary and compelling reason for compassionate release.

Even if there were extraordinary and compelling reasons for compassionate release, it is still important for Ogle to serve the remainder of his sentence because of the seriousness of his offenses, the need to promote respect for the law, and his continuing danger to the public.  The Court's analysis of the § 3553(a) factors at the sentencing hearing continues to apply now.  Ogle has a history of violence and repeated failures on supervision when he was released.  Even while serving this sentence, Ogle has had some successes in his prison job, but he has also threatened a staff member with violence.  It appears Ogle's proclivity for disobeying rules and resorting to violence has not gone away, and releasing him from prison at this time would put the public at too much risk.  In fact, the BOP classifies Ogle as at a high risk of recidivism.  All in all, the Court still believes that the 126-month sentence it originally imposed is no longer than necessary to achieve the purposes of sentencing.  Ogle's crime was serious and the punishment was just at the time it was imposed.  Serving that sentence in its entirety (minus whatever credit is awarded by the BOP) will continue to promote respect for the law and protect the public from Ogle's violence.

### III. Conclusion

For all of these reasons, the Court **DENIES** Ogle's motion for compassionate release (Doc. 516).  Furthermore, because counsel's presence in this case would not have had a reasonable chance of changing the outcome, the Court **DENIES** Ogle's motion for appointment of counsel (Doc. 517).

**IT IS SO ORDERED.**
**DATED:  June 27, 2022**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

8